BAYERISCHEN NATIONAL VERBAND VON NORD AMERIKA

*v.*

ANNA KNAUS et al.

[Decided April 14th, 1909.]

Where a policy of life insurance is payable to a person named and designated as wife of insured, and on his death two women claim to be the person so named and designated, the insurance company is entitled to maintain a bill of interpleader.

Bill of interpleader.  Heard on bill, answer of one defendant, and proofs in open court.

This is a bill filed by a beneficial society to cause two claimants of a fund it holds to interplead.

The bill sets up that by its certificate, No. 7717, issued to Joseph Knaus, it was obligated, upon his death, to pay the sum of $400 to his wife, Anna Knaus.  It charges his death, and that a woman living in America and named Anna Knaus has demanded the money of them, as has also a woman living in Germany, and that the latter's name is also Anna Knaus.

Each claims to be the legal wife of the member, and to be entitled to the money.

Anna Knaus of America has brought a suit in the Hoboken district court for the money, and it is sought by the bill to enjoin this suit.

The Anna Knaus of America filed an answer denying the right of the complainant to cause the defendants to interplead.

The Anna Knaus of Germany did not file any answer, her solicitor acting under rule 221.

The facts will sufficiently appear in the opinion.

*Mr. Frederick Dieffenbach,* for the complainant.

*Messrs. Weller & Lichtenstein,* for Anna Knaus of America.

*Mr. John D. Pierson,* for Anna Knaus of Germany.

GARRISON, V. C.

The sole question to be determined at this time is whether the complainant has made out a case entitling it to a decree of interpleader.

The pleadings and proofs before the court show that on the 12th day of July, 1904, the complainant issued a certificate as follows: .

"Death certificate No. 7717 issued by the Bavarian National Union of North America for compatriot Joseph Knaus of Bavarian Section 1, in Jersey City, N. J.

"This Certificate attests, that compatriot Joseph Knaus is a member of said Union and member of Hudson County Section 1, in Jersey City, State of New Jersey, and is fully entitled to the privileges of membership of the Bavarian National Union of North America and shares in the fund for mutual aid in said Bavarian National Union according to the following terms: . .

"In case of his wife's demise said member receives the sum of Two hundred fifty dollars ($250) and in case of the said member's demise, his wife or children, or that person or persons or body to whom the death-money has been assigned during the said member's lifetime by him shall be paid the sum of Four hundred dollars ($400.)

"According to direction by above mentioned member now this latter sum of four hundred dollars ($400.) shall be paid to his wife Mrs. Anna Knaus after his death within the lawful time.

"This certificate stipulates, or has full validity only, if compatriot Joseph Knaus remains a member and fulfills all obligations, laws and regulations of the Bavarian National Union of North America at all times.

"In Witness Whereof the Bavarian National Union of North America ordains the signatures of the Grand-President and Grand-Secretary, provided with the National Union's Seal.

"Buffalo, N. Y. on the 12th . day of the month of July in the year 1904."

The Joseph Knaus named therein is dead. The complainant admits its liability to pay, under the certificate, to whomsoever is legally entitled thereto.

Joseph Knaus wrote letters to a woman in Germany, whom he called Mrs. Anna Knaus, and to whom he referred as his wife, and in these letters refers to their children.

Joseph Knaus also, coming to America and leaving the woman in Germany, took up with another woman here, and lived with her, calling her his wife, and she also is known as Mrs. Anna Knaus.

The death certificate recites that they are to pay the money "to his wife, Mrs. Anna Knaus."

The American Mrs. Anna Knaus has brought suit. The German Mrs. Anna Knaus has lodged a claim and authorized certain relatives in America to act as her attorneys in fact to collect the same.

The contention of the American Mrs. Anna Knaus is that she clearly is entitled to the money, and, therefore, the complainant has not the right to cause her and the other defendant to interplead. She bases her claim upon what appears in the application for membership, which she says, if read in connection with the certificate, would indicate clearly that she was the person entitled and the person to whom, under the authority of *Prudential Insurance Company* v. *Morris, 70 Atl. Rep. 924,* the money must be paid.

The application is not mentioned in the certificate, and there would seem to be a grave question as to whether it is any part of the contract. Under the by-laws there may be a grave question as to whether whichever one of these parties is not his wife could take the money as if she were his wife.

In my view, there is no doubt that under the authorities in this state and the proper principle to be applied, the complainant is entitled to cause the defendants to interplead. In the case of *Pennsylvania Railroad Co.* v. *Earl's Executors, 63 N. J. Eq. (18 Dick.) 634,* a very similar contention was presented to the court. In that case the widow of a member of a beneficial order claimed that by the perfectly plain terms of the contract she was entitled to the money, and that the stakeholder, therefore, was not entitled to file a bill of interpleader. Although the vice-chancellor was inclined to agree with her contention that she showed the better right to the money, he held that the complainant had an equity not to be sued twice when it had but one liability and had no duty to decide between the respective contentions of the

claimants upon the fund, but was entitled to protection from both.

This holding was in consonance with the previous decisions in this state. *Packard* v. *Stevens,* 58 *N. J. Eq.* (*13 Dick.*) 489; *Pennsylvania Railroad Co.* v. *Wolfe,* 52 *Atl. Rep.* 247; *Wakeman* v. *Kingsland,* 46 *N. J. Eq.* (*1 Dick.*) 116; *Supreme Council of Chosen Friends* v. *Bennett,* 47 *N. J. Eq.* (*2 Dick.*) 42; *Ireland* v. *Kelly,* 60 *N. J. Eq.* (*15 Dick.*) 312; *Catholic Benevolent Legion* v. *Murphy,* 65 *N. J. Eq.* (*20 Dick.*) 60.

The wisdom of the rule is curiously exemplified by the very case from which I have cited it. In that case (*Pennsylvania Railroad Co.* v. *Earl's Executors, supra*) the vice-chancellor was clearly of the opinion that the widow had the better claim, and, in the suit itself over the fund after the interpleader, so decided.

Upon appeal, however, to the court of errors and appeals his decision in that respect was reversed, and it was held that she had no interest in the fund whatever. *Stevenson* v. *Earl,* 65 *N. J. Eq.* (*20 Dick.*) 721.

If, in the case at bar, the court should determine that an interpleader does not lie, the complainant must solve many debatable questions, and all of them at its own peril. I do not think that this burden should be cast upon a stakeholder who is willing to bring the money into court, who is not a wrong-doer as to any of the defendants, and who seeks protection against conflicting claims, each of which has some debatable basis.

I will advise a decree of interpleader, and will order that the defendants frame an issue between themselves and bring on the hearing as to their rights in the fund.